IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| GARY FOSTER, JAN FOSTER, JUSTIN FOSTER, KELLEY FOSTER, Individually, GARY & JUSTIN FOSTER PARTNERSHIP, and WHITFIELD ACRES INC., <br><br>VS. <br><br>CORTEVA AGRISCIENCE | § § § § § § § § § § § § | Civil Action No. 5:25-cv-183 |

## PLAINTIFFS' ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, GARY FOSTER and JUSTIN FOSTER, Individually, and for and on behalf of GARY & JUSTIN FOSTER PARTNERSHIP, JAN FOSTER and KELLEY FOSTER, Individually, and WHITFIELD ACRES INC., hereinafter referred to as "Plaintiffs," and file this their Original Complaint, complaining of CORTEVA AGRISCIENCE LLC, hereinafter referred to as "Defendant" or "Corteva," and for causes of action and grounds therefore, Plaintiffs would respectfully show this Honorable Court the following:

### I. INTRODUCTION AND BRIEF SUMMARY OF PROCEEDINGS

1.   This case stems from Defendant Corteva's provision of defective cotton seed to Plaintiffs in anticipation of the Spring, 2024 planting season. Corteva had a contract regarding such seed with some of the Plaintiffs, but not all of them. This was because the local seed purveyor, not a party to this suit, provided seed to all of the Plaintiffs,

but only Plaintiff Gary & Justin Foster Partnership were required to sign a Corteva Agriscience Technology Use Agreement, "TUA".. Based on information and belief, the seed was delinted and delivered to each of the Plaintiffs in or around Lubbock and planted in Plaintiffs' various cotton fields all in the Lubbock area (Swisher, Castro, Hale and Floyd counties). Pursuant to the TUA between Corteva and one of the Plaintiffs, (Gary & Justin Foster Partnership), Corteva may contend that per a purported forum selection clause in the TUA, this case must be filed in Iowa. In due course, if and when Corteva files any sort of transfer motion, Plaintiffs will show that any such contention lacks merit.

2.    Plaintiffs bought and took possession of Corteva's specially engineered and designed cotton seed which was expressly represented by Corteva to be of the highest quality. It proved to be no such thing, causing Plaintiffs to sustain significant damages for which Corteva can and should be held accountable.

## II. PARTIES

3.    Plaintiffs Gary Foster and Justin Foster are the owners and operators of the Gary and Justin Foster Farms Partnership. They bring this suit individually and on behalf of their Partnership. They lawfully reside in the State of Texas. The Partnership is organized under the laws of the State of Texas.

4.    Plaintiffs Jan Foster and Kelley Foster lawfully reside in the State of Texas.

5.    Whitfield Acres, Inc., is a corporation organized under the laws of the State of Texas and its principal place of business is in this state.

6.     Defendant, Corteva Agriscience LLC, is a foreign corporation organized under the laws of the State of Delaware and its headquarters are located in the State of Indiana. Its principal place of business in the State of Texas is located at 120 E. Insurance Street, Lubbock, TX 79403.  The Defendant may be served with citation by serving its registered agent, *to wit:* RA: CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, TX 75201-3136.

### III.  JURISDICTION AND VENUE

7.     This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. §1332(a)(1) because Plaintiffs are citizens of Texas and/or business entities organized under the laws of the State of Texas, with their principal places of business in Texas. Non-citizen Defendant Corteva Agriscience LLC, is a foreign corporation organized under the laws of the State of Delaware and its headquarters are located in the State of Indiana. Defendant is owned by DDP Agrosciences US DCOMCO, LLC ("DDP") and Pioneer Hi-Bred International, Inc. ("Pioneer"). The sole member of DDP is Pioneer which wholly owned by EIDP, Inc. ("EID"). EID is wholly owned by Corteva, Inc., a publicly traded company. DDP is a Delaware LLC with its principal place of business in Delaware. Pioneer is an Iowa corporation with its principal place of business in Iowa. EID is a Delaware corporation with its principal place of business in Delaware. Corteva, Inc. is a Delaware corporation with its principal place of business in Indiana. Thus, it is a citizen of a state or states other than Texas and the amount in controversy exceeds $75,000, excluding interest and costs. Therefore, this Court has

3

diversity jurisdiction and specific personal jurisdiction, as well as general jurisdiction, over all the Parties pursuant to 28 U.S.C. §1332(a)(1).

8. Venue is proper in this the Northern District of Texas, and in this Lubbock Division thereof, because all or a very substantial portion of the events giving rise to this lawsuit occurred herein.

## IV. CONDITIONS PRECEDENT

9. Plaintiffs allege that with regard to their claims herein asserted against Defendant Corteva based upon the Texas DTPA, to the extent that such are deemed necessary, all conditions precedent have occurred and/or been performed as might be required by law.

## V. UNDERLYING FACTS SUPPORTING PLAINTIFFS' CLAIMS

10. Pursuant to Fed. R. Civ. P. 8 and 9, Plaintiffs herewith provide as many facts surrounding this matter and giving rise to the liability claims they herein assert against Defendant Corteva as are presently known to them based upon their personal recollections and reasonable, duly diligent investigation. The provision of the following summary of facts is expressly intended to provide Defendant Corteva and this Court with a detailed understanding of their stated claims and the basis therefore; and, to place said Defendant on fair notice of why Plaintiffs assert the claims they do against it.

11. In the spring of 2024, the Foster family, operating under three entities –Gary & Jan Foster as individuals, Gary & Justin Foster as a partnership, and Whitfield Acres Inc. (hereinafter referred to as "the Fosters")–used Corteva's Phytogen Cotton

seed variety 350 to plant across 2,616 acres spread out among the Fosters different fields. Not all of the acreage planted by the Fosters is contiguous, and some fields are miles apart across Swisher, Castro, Hale and Floyd counties. The planting conditions were ideal, with all acres set in cover crops, wheat stubble, or milo stalks, and both irrigated and dryland areas had sufficient moisture presenting the best opportunity in a number of years. However, the seeds, all from lot number L019NB7KX6, failed to emerge properly, leading to significant issues.

12.    After the initial planting on May 3, 2024, it became clear that there was a problem as only a few seeds germinated, but none emerged from the ground. Efforts to promote emergence through rotary hoeing and light irrigation were futile. The Fosters then decided to replant, initially sticking with variety 350 from a different lot of Phytogen cotton seed (L019NB6KX3) on May 24, but again, the seeds did not emerge. This led to a *second replant* with different varieties, resulting in a total of 5,037 acres being planted and replanted. Each replant was a setback, causing not only significant yield loss, buts additional costs due to more seed, irrigation, fuel, equipment wear and tear and labor.

13.    The Fosters notified and engaged with Phytogen representatives, Michelle Harre and Cameron Oliver, who visited on May 28, 2024, to assess the situation. As the Fosters and Phytogen representatives initially toured the fields, Phytogen's representatives' initial explanations for the failed emergence ranged from cold and wet conditions to heat and bugs, however, it was only upon seeing the fields in action that they acknowledged a possible seed issue. Despite this, Phytogen representatives

insisted that the seed germination tests reportedly showed the lots passing. However, on October 31, 2024 the Fosters learned from Phytogen representatives that whenever germination tests show positive results despite emergence failure, the likely issue lies in the delinting processes and/or seed oil content being insufficient to promote emergence. Corteva's delinting of the Phytogen seeds that the Fosters planted was allegedly performed by Bayer for Corteva, in Lubbock, Texas.

14. The Plaintiffs would show that there are a number of issues that can cause delinted seeds to pass a germination test, yet fail to emerge including over-delinting where too much outer seed coat is removed, and varied uniformity in the process in which some seeds are properly delinted and others are not. Other issues include mechanical and heat damage where the radicle is either physically injured or exposed to heat that affects the seeds ability to emerge while still germinating. Further, acids are commonly used to delint cotton seeds, however, if not properly managed the acid can penetrate the embryo affecting viability. Whether the seeds were rendered defective by the delinting process or not, whether they passed their germination tests in a lab environment or not, when they arrived to the Fosters and faced the Lubbock-region's soil, they were indeed ineffective, resulting in a disastrous financial loss to the Fosters.

15. After numerous meetings, including one on October 31, 2024, with Blake Eggl, Phytogen offered to cover the cost of replant seed at 100% and to provide 20 bags of free seed with a purchase of 2025 product, which was significantly less than the financial impact felt by the Fosters. The discussions highlighted a significant

disparity between the company's acknowledgment of the issue and the compensation offered, with Phytogen representatives asserting that such replanting was common in the region.

16. As a result of the replanting, the harvest began late and failed to perform as advertised. Fields like 3008 and 2078 yielded far below expectations, with irrigated land averaging 450 and 764 lbs/ac respectively, compared to potential yields of 1,500 to 2,000 lbs/ac in previous years. During an October 15, 2024, visit between the Fosters and Phytogen representatives, where those representatives were able to compare the Fosters' fields with their neighbors' cotton fields, when Justin Foster pointed out the neighboring fields' cotton, the response from Phytogen's representatives was that Phytogen was not a "showy" variety of cotton which ignored the failure to produce an economically viable crop, whether "showy" or not.

17. The Fosters presented the Phytogen representatives with loss estimates which were the direct result of the failed cotton seed. The Fosters would also show that some neighboring fields produced an estimated 2,385 lbs. an acre, while the Fosters were barely able to muster half of that yield. On the Foster's field number 3008, one 120-acre pivot only yielded a total lint of 918.5 lbs. an acre, while another 120-acre pivot failed to yield any harvestable amount of cotton. Similarly, field 2078 only harvested 764 lbs. an acre. This led to an estimated loss of $1,570,930 excluding additional costs like interest, extra irrigation expenses, and equipment depreciation. In short, because of the defective technology in Corteva's cottonseed, the Fosters have suffered an enormous financial hardship.

## VI. CAUSES OF ACTION

### Count 1—Deceptive Trade Practices Act

18. Plaintiffs were consumers or business consumers located in the State of Texas. Defendant Corteva, which operates its Lubbock R&D Facility in Texas, held out to the public that their Phytogen Cotton Seeds are "Improving West Texas Cotton Yields," and quoting Texas cotton farmers as saying that "Phytogen® W3FE varieties are keeping cotton king in West Texas with '*game-changing*' high yields."

19. False, misleading or deceptive acts or practices in the conduct of any trade or commerce are unlawful in the State of Texas. It is a false, misleading, or deceptive act or practice to represent that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have. Tex. Bus. & Comm. Code §17.46(a)(b)(5). Corteva represents that their cotton seeds "improve" cotton yields, are "keeping cotton king…with **game-changing high yields**." However, the seeds sold to Plaintiffs did not increase their cotton yields nor make Plaintiffs' cotton kings, in fact, their cotton seeds yielded game-changing *low* yields.



### Count 2—Implied Warranty of Fitness for a Particular Purpose

20.  Corteva knew or had reason to know of any particular purpose for which the goods are required, which in this case was to provide cotton seeds suitable for West Texas soils. In fact, Phytogen markets itself as the No. 1 cotton seed brand in the Lubbock area. Plaintiffs relied on Corteva's skill or judgment to furnish those West Texas-specific cotton seeds and to produce Lint Yields in line with those advertised. Phytogen breached this implied warranty by providing seeds that produced fractions of those advertised by Phytogen.



### Count 3—Implied Warranty of Merchantability

21.  The warranty of merchantability is implied in a sale of goods if the seller is a merchant for that type of goods. As a seller of multiple cotton seed varietals, Corteva is a cotton seed merchant and impliedly warrants that the goods (1) pass without objection in the trade; (2) are fair average quality; (3) are fit for the ordinary purposes

of such goods; (4) run of even kind, quality, and quantity within and among all units; (5) are adequately contained, packaged, and labeled; and, (6) and conform to the promises or affirmations of fact made on the label.

22.     To have a defect under this claim, the goods must lack something necessary for adequacy. In this case, Plaintiffs followed general standards in the industry for storage, planting, and growing the seeds under anticipated conditions, however, the seeds failed to emerge and failed their ordinary purpose causing the Fosters' damages.

<u>Count 4—DTPA Breach of Express or Implied Warranty</u>

Plaintiffs v. Corteva Agribusiness

23.     A consumer may maintain an action for the breach of an express or implied warranty, which constitutes a producing cause of economic damages or damages for mental anguish. Plaintiffs allege that Corteva has breached the implied warranties as alleged in Counts 2 and 3.

24.     The false, misleading, and deceptive practices engaged in by Corteva were committed intentionally and knowingly. Plaintiffs seek to recover all actual damages in the form of the costs of seeds, the costs of attempting to salvage their failed crop, the costs of replanting, their loss in revenue, interest on borrowed or owed funds, and other actual damages. The Fosters further seek to recover those treble damages and their attorneys' fees for the knowing DTPA violations.

25.     It is Plaintiffs' contention that the false, misleading, and deceptive practices engaged in by Corteva were committed intentionally and knowingly. Plaintiffs seek

to recover all actual damages arising from the loss of costs of seeds, the costs of initial field preparation, planting, repreparing, replanting and related attempts to salvage their repeatedly failed crops, their losses in materials, personnel efforts, petroleum, use of farm equipment and wear and tear upon the same, their losses in revenue, interest on borrowed or owed funds, and other actually sustained or incurred damages. Plaintiffs further seek to recover for mental anguish, together with their reasonable attorneys' fees and costs of court and expenses incurred in bringing these claims. Plaintiffs further seek to recover treble damages for the knowing DTPA violations, for the knowing DTPA violations.

## VII. PLAINTIFFS' DAMAGES

26. The false, misleading, and deceptive practices engaged in by Corteva were committed intentionally and knowingly. Once again, Plaintiffs seek to recover all actual damages arising from the loss of costs of seeds, the costs of initial field preparation, planting, repreparing, replanting and related attempts to salvage their repeatedly failed crops, their losses in materials, personnel efforts, petroleum, use of farm equipment and wear and tear upon the same, their losses in revenue, interest on borrowed or owed funds, and other actually sustained or incurred damages. Plaintiffs further seek to recover for mental anguish, together with their reasonable attorneys' fees and costs of court and expenses incurred in bringing these claims. Plaintiffs further seek to recover treble damages for the knowing DTPA violations.

## VIII. CLAIMS FOR PRE- AND POST-JUDGMENT INTEREST

27. In addition to the above and foregoing allegations, Plaintiffs further plead that upon recovery of a judgment on the merits on their claims herein asserted in their favor, they are entitled to seek and further recover prejudgment interest at the highest rate allowed by law, together with post-judgment interest at the highest rate allowed by law until any such judgment is paid and satisfied in full.

## IX. JURY DEMAND

28. Plaintiffs respectfully assert their right, pursuant to the Seventh Amendment to the United States Constitution, for trial by jury on all issues of fact and law to which they are entitled; and, pursuant thereto they hereby respectfully request and/or demand the same. Such jury request and/or demand is timely and properly made pursuant to Fed. R. Civ. P. 38(a) and (b)(1).

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs GARY FOSTER and JUSTIN FOSTER, Individually, and for and on behalf of GARY & JUSTIN FOSTER PARTNERSHIP, JAN FOSTER and KELLEY FOSTER, Individually, and WHITEFIELD ACRES INC. respectfully pray that Defendant CORTEVA AGRISCIENCE LLC be cited in terms of law to appear and answer herein as the law directs, and that upon final hearing hereof, Plaintiffs do have and recover judgment of and from the said Defendant an amount exceeding the minimum jurisdictional limits of the Court, inclusive of all past and future actual and compensatory damages proved by a preponderance of the evidence, plus pre-judgment interest thereon at the

highest legal rate, costs of court, post-judgment interest at the highest rate permitted by law, and for such other and further relief, general and special, at law or in equity, to which Plaintiffs, may show themselves justly entitled to receive, including each of the following:

1) Judgment against Defendant Corteva for actual damages in an amount to be determined by the jury;
2) statutory benefits as provided for in Texas statutory law;
3) actual damages arising from the loss of costs of seeds, the costs of initial field preparation, planting, repreparing, replanting and related attempts to salvage their repeatedly failed crops, their losses in materials, personnel efforts, petroleum, use of farm equipment and wear and tear upon the same;
4) losses in revenue, interest on borrowed or owed funds, and other actually sustained or incurred damages, as provided by Texas statutory law;
5) past mental anguish, through time of trial, as provided by Texas statutory law;
6) reasonable attorneys' fees and costs of court and expenses incurred in bringing these claims;
7) treble damages for the knowing DTPA violations, as provided by Texas statutory law;
8) pre-judgment interest as provided by Texas statutory law;
9) post-judgment interest as provided by Texas statutory law; and,

10) such other and further relief, actual or special, whether based upon statutory or common law, which Plaintiffs may have shown themselves to be justly entitled to receive, whether at law and/or in equity.

Respectfully submitted,

EILAND & BONNIN, PC

*A. Craig Eiland*
A. Craig Eiland
State Bar No. 06502380
1220 Colorado St., Suite 300
Austin, TX 78701
ceiland@eilandlaw.com
Patrick H. Gurski
State Bar No. 24091105
2200 Market St., Suite 501
Galveston, TX 77550
pgurski@eilandlaw.com
Phone (409) 763-3260
Fax (713) 513-5211

LAW OFFICES OF J PETE LANEY

/s/ *J. Pete Laney*
J. Pete Laney
State Bar No. 24036942
Westgate Building
1122 Colorado Street, Suite 110A
Austin, Texas 78701
jpete@jpetelaneylaw.com
Phone: (512) 473-0404
Fax: (512) 672- 6123

ATTORNEYS FOR PLAINTIFFS GARY FOSTER and JUSTIN FOSTER, Individually, and for and on behalf of GARY & JUSTIN FOSTER PARTNERSHIP, JAN

FOSTER and KELLEY FOSTER, Individually, and WHITEFIELD ACRES INC.


*/s/ Matt D. Matzner*
MATT D. MATZNER
Texas Bar No. 00797022
MORGAN DAY VAUGHAN
Texas Bar No. 24060769
CRENSHAW, DUPREE & MILAM, L.L.P.
P.O. Box 64479
Lubbock, Texas 79464-4479
mmatzner@cdmlaw.com
mvaughan@cdmlaw.com
Telephone: (806)762-5281
Facsimile:  (806) 762-3510

LOCAL COUNSEL FOR PLAINTIFFS GARY FOSTER and JUSTIN FOSTER, Individually, and for and on behalf of GARY & JUSTIN FOSTER PARTNERSHIP, JAN FOSTER and KELLEY FOSTER, Individually, and WHITEFIELD ACRES INC.