UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| GARY FOSTER, et al., Plaintiffs, v. CORTEVA AGRISCIENCE LLC, Defendant. | No. 5:25-CV-183-H |

**MEMORANDUM OPINION AND ORDER**

The plaintiffs—the Foster family—have been in the cotton business for generations. During the spring 2024 planting season, they had a setback when seeds produced by Corteva Agriscience LLC did not emerge from the ground. The Fosters later sued Corteva, alleging violations of the Texas Deceptive Trade Practices Act (DTPA) and breaches of the implied warranties of merchantability and fitness for a particular purpose. Corteva moved to dismiss under Rule 12(b)(6). Dkt. No. 6.

The motion is granted. Corteva's statements underlying Count One—that its Phytogen seeds would "keep[] cotton king in West Texas" and produce "game-changing high yields"—amount to puffery that cannot sustain a DTPA action. The remaining claims fail because the Fosters entered into a contract with Corteva that expressly disclaimed the implied warranties of merchantability and fitness for a particular purpose. Thus, the Court dismisses the remaining claims with prejudice. But because there is no evidence of futility, the Court grants the Fosters leave to amend their complaint on Count One. Similarly, because the complaint fails to allege any facts with respect to plaintiff Kelley Foster, the Court dismisses her claims from the suit without prejudice to filing an amended complaint that adds specific allegations about her involvement in this matter.

## 1. Factual and Procedural Background

### A. Factual Background

#### i. Allegations[1]

The Fosters farm cotton on thousands of acres near Lubbock, Texas. *See* Dkt. No. 1 ¶ 11. The family operates under three entities: Gary and Jan Foster as individuals, the Gary & Justin Foster Partnership, and Whitfield Acres Inc. *Id.* Some of the Fosters' acreage is contiguous, while other fields are spread across Swisher, Castro, Hale, and Floyd counties. *Id.* The family has grown cotton for many years. *See* Dkt. No. 24 at 5.

Since 2019, the Fosters have sourced cotton seeds from Corteva Agriscience LLC. *Id.* at 6. Corteva is an Indiana-based agricultural company that develops and sells seeds for crop production, among other things. *See* Dkt. No. 1 ¶ 7. With a research and development facility in Lubbock, Corteva sells its Phytogen cotton seeds to farmers in West Texas. *See id.* ¶¶ 18, 20. To that end, Corteva advertised on its website that its Phytogen cotton seeds are "Improving West Texas Cotton Yields." *Id.* ¶ 18. And it asserted that "Phytogen® W3FE varieties are keeping cotton king in West Texas with '***game-changing***' **high** yields." *Id.* (emphasis in original).

In the spring of 2024, the Fosters planted Phytogen cotton seeds across 2,616 acres. *Id.* ¶ 11. Planting conditions were "ideal," with cover crops and moisture posing the "best opportunity in a number of years." *Id.* But the seeds failed to emerge from the ground. *Id.* ¶¶ 12, 14. The Fosters tried to fix the problem—through rotary hoeing, irrigation, and talks with Phytogen representatives, for example—but were unsuccessful. *Id.* ¶¶ 12–13. The

[1] The factual allegations, taken as true, are drawn from the Fosters' complaint. *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016); *see* Dkt. No. 1.

setbacks led to multiple replants, each requiring more seed, labor, and fuel. *Id.* ¶ 12. In the end, the Fosters suffered a significant drop in anticipated cotton yield, leading to an estimated loss of over $1.5 million. *Id.* ¶ 17.

**ii. The Technology Use Agreement**

In 2022, well before the crop failure, the Gary & Justin Foster Partnership entered into a Technology Use Agreement (TUA) with Corteva. *See* Dkt. No. 8. The TUA is a contract between the "Grower" and Corteva that restricts the Grower's use of Corteva's seed. *Id.* ¶¶ 2, 4, 5. Relevant here, the TUA also expressly disclaims any implied warranty of merchantability and of fitness for a particular purpose. *Id.* ¶ 8. And it includes a forum-selection and governing-law provision, which selects the forum and law of Iowa.[2] *Id.* ¶ 11.

**B. Procedural Background**

The plaintiffs are Gary Foster, Jan Foster, Justin Foster, Kelley Foster, the Gary & Justin Foster Partnership, and Whitfield Acres Inc. Dkt. No. 1 ¶¶ 3–5. They bring four claims against Corteva. Count One alleges that Corteva violated the DTPA by claiming that Phytogen cotton seeds are "Improving West Texas Cotton Yields" and "keeping cotton king in West Texas with 'game-changing' high yields." *Id.* ¶¶ 18–19 (emphasis omitted). Count Two claims that Corteva breached the implied warranty of fitness for a particular purpose by failing to "provide cotton seeds suitable for West Texas soils." *Id.* ¶ 20. Count Three alleges a breach of the implied warranty of merchantability based on alleged defects in the Phytogen seed. *Id.* ¶¶ 21–22. And Count Four raises another DTPA claim premised on breaches of the implied warranties alleged in Counts Two and Three. *Id.* ¶ 23–25.

[2] Corteva has not enforced the forum-selection clause in this litigation.

Through this lawsuit, the Fosters seek actual damages, lost revenue, mental anguish, and treble damages for knowing violations of the DTPA. *Id.* ¶ 26.

Corteva moved to dismiss all four counts under Rule 12(b)(6). Dkt. No. 6. The Fosters responded (Dkt. No. 24) and Corteva replied (Dkt. No. 19). The motion is ripe.

**2. Legal Standard**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The plaintiff must allege sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). If a complaint "pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 557).

Defendants can challenge a complaint's factual sufficiency through a motion to dismiss under Rule 12(b)(6). In resolving motions to dismiss, courts must "accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff." *Richardson v. Axion Logistics, LLC*, 780 F.3d 304, 306 (5th Cir. 2015) (internal alterations omitted) (quoting *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010)). But courts should not "accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Plotkin v. IP Axess*

*Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

**3. Analysis**

**A. Count One fails to allege a false, misleading, or deceptive act by Corteva in violation of the DTPA.**

First up is Count One, which alleges that Corteva engaged in false, misleading, or deceptive acts in violation of the DTPA by advertising that "Phytogen Cotton Seeds are 'Improving West Texas Cotton Yields,' and quoting Texas cotton farmers as saying that 'Phytogen® W3FE varieties are keeping cotton king in West Texas with ***game changing*** **<u>high</u>** yields.'" Dkt. No. 1 ¶ 18 (emphasis in original) (internal quotation marks omitted). As the Fosters see it, these statements are false or misleading because the Phytogen seeds from 2024 did not increase the family's cotton yields. *Id.* ¶ 19. To the contrary, the seeds, they say, "yielded game-changing ***<u>low</u>*** yields." *Id.* (emphasis in original). But because Corteva's statements are mere opinion or puffery, not a material representation of fact, they do not violate the DTPA.

The DTPA provides a cause of action for consumers injured by false, misleading, or deceptive acts or practices. *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996) (citing Tex. Bus. & Com. Code § 17.50(a)(1)). There are three elements to a DTPA claim: "(1) the plaintiff is a consumer; (2) the defendant engaged in false, misleading, or deceptive acts; and (3) these acts constituted a producing cause of the consumer's damages." *Hugh Symons Grp., plc v. Motorola, Inc.*, 292 F.3d 466, 468 (5th Cir. 2002).

To be actionable under the DTPA, a misrepresentation must concern a material fact; it cannot be puffery or opinion. *Autohaus, Inc. v. Aguilar*, 794 S.W.2d 459, 462 (Tex. App.—Dallas 1990, writ denied) (citing *Pennington v. Singleton*, 606 S.W.2d 682, 687 (Tex. 1980)).

As the Fifth Circuit has explained, puffery, or "sales talk," are the "loose general statements made by sellers in commending their wares." *Presidio Enters., Inc. v. Warner Bros. Distrib. Corp.*, 784 F.2d 674, 682 (5th Cir. 1986) (quotation omitted). In other words, "[p]uffery is an expression of opinion by a seller not made as a representation of fact." *Dowling v. NADW Mktg., Inc.*, 631 S.W.2d 726, 729 (Tex. 1982) (internal quotation marks omitted). Whether a statement is one of fact or opinion depends on the circumstances, including the specificity of the statement. *GJP, Inc. v. Ghosh*, 251 S.W.3d 854, 889 (Tex. App.—Austin 2008, no pet.).

Consider a few examples. Texas courts have found puffery where, for example, a party claimed that "an investment is 'low risk' and will 'produce large revenues for a long time.'" *Id.* (quoting *Paull v. Cap. Res. Mgmt., Inc.*, 987 S.W.2d 214, 218 (Tex. App.—Austin 1999, pet. denied)). The same goes for assertions that a property is "superb," "super fine," and "one of the finest little properties in the City of Austin." *Id.* (quoting *Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd.*, 896 S.W.2d 156, 163 (Tex. 1995)); *see also Nathenson v. Zonagen Inc.*, 267 F.3d 400, 419 (5th Cir. 2011) (holding in a securities fraud case that statements about a product's "improved formulation" were inactionable puffing). More generally, "using 'broad, and vague, commendatory language comparing [one's] goods favorably with others, or praising them as good, proper, sufficient, and the like' amounts to mere sales talk or puffery, not a statement of material fact." *Alkane Midstream LLC v. Mesa Nat. Gas Sols., LLC*, MO:25-CV-214, 2025 WL 3900263, at *5 (W.D. Tex. Dec. 19, 2025) (alteration in original) (quoting *GJP, Inc.*, 251 S.W.3d at 889), *report & recommendation adopted*, 2026 WL 39422 (Jan. 6, 2026).

Corteva's claims that its Phytogen cotton seed is "improving West Texas cotton yields" and producing "game-changing high yields" fit neatly with these examples. The

claims—broad as they are—do not make specific factual representations or comparisons. *Cf. Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997) (holding in the Lanham Act context that an advertisement that grass seed resulted in "50% Less Mowing" was not puffery). Instead, claims that Phytogen cotton seed is "keeping cotton king in West Texas" and producing "game-changing high yields" are like claims that a property is "super fine," *Prudential*, 896 S.W.2d at 163, or that an investment will "produce large revenues for a long time." *Paull*, 987 S.W.2d at 218; *see also Martin Rispens & Son v. Hall Farms, Inc.*, 621 N.E.2d 1078, 1083 (Ind. 1993) (noting that the statement "top quality seeds" is a "classic example of puffery"). Indeed, the challenged claims are best characterized as opinions. In one analogous case, Corteva notes, a federal district court concluded that a seed seller's advertisement of "excellent yield in area of adaptation" was a "statement[] of the seller's opinion" and was "legally-allowed puffing." *Bickett v. W. R. Grace & Co.*, 12 UCC Rep. Serv. 629, 633 (W.D. Ky. Mar. 31, 1972); *see* Dkt. No. 7 at 12. And Corteva's claim that Phytogen seeds are "keeping cotton king in West Texas" is even less specific than a claim that a company has the "best service department in the Big Country," which a Texas court labeled as non-actionable puffing. *Pate v. Fun Town RV San Angelo, LP*, No. 03-22-059, 2024 WL 3995413, at *7 (Tex. App.—Austin 2024, no pet.). Thus, the challenged statements by Corteva are not false, misleading, or deceptive for purposes of a DTPA claim.[3]

The Fosters counter by pointing to Corteva's regional data—not mentioned in Count One of the complaint—summarizing 2021 cotton yields in Lubbock for the Phytogen seed at issue. Dkt. No. 24 at 8; *see* Dkt. No. 1 ¶¶ 18–19. As they see it, this data "is the opposite of

[3] The parties dispute whether Rule 9(b)'s heightened pleading standard applies. The Court does not reach that question since the Fosters do not state a plausible claim under Rule 8's less-stringent standard.

puffery" because it tells the consumer that Phytogen seeds have previously produced certain yields and that the consumer can expect the same result. Dkt. No. 24 at 8. But the Fosters do not allege that any plaintiff viewed this data or relied on it to buy Phytogen seed. It is hard to say, then, that the regional data was a "producing cause" of the Fosters' injuries—an essential element of a DTPA claim.[4] *Hugh Symons Grp.*, 292 F.3d at 468. The absence is notable: The complaint claims to include "as many facts . . . presently known to" the Fosters. Dkt. No. 1 ¶ 10. Similarly, the Fosters assert that the challenged claims are "specific to West Texas conditions" and imply "superior yields tailored to regional soils and farming[] and verified by lab testing." Dkt. No. 24 at 7–8. But none of those belated attempts to bolster the pleadings can be found in Count One of the complaint. *See* Dkt. No. 1 ¶¶ 18–19. Thus, the regional data and statements about geographic specificity do not render the challenged claims actionable under the DTPA.

### B. The TUA expressly disclaims the implied warranties of fitness for a particular purpose and merchantability, dooming Counts Two and Three.

Next are Counts Two and Three. They allege, respectively, breaches of the implied warranty of fitness for a particular purpose and the implied warranty of merchantability. As the argument goes, Corteva breached the implied warranties by selling Phytogen seeds that underperformed and were not fit for use. *See* Dkt. No. 1 ¶¶ 20–22.

[4] The same is true for the statements discussed in the complaint. The Fosters do not allege that any plaintiff viewed Corteva's claims that its Phytogen seed is "Improving West Texas Cotton Yields" and "keeping cotton king in West Texas with 'game-changing' high yields." *See* Dkt. No. 1 ¶ 18 (emphasis omitted). Nor does the complaint allege that these statements produced the Fosters' injuries. But Corteva's motion does not raise this argument as a ground for dismissal, and the party-presentation principle counsels against injecting it now. *See United States v. Sineneng-Smith*, 590 U.S. 371, 375–76 (2020).

Setting aside the merits, the parties dispute whether the Fosters are bound by the TUA's express disclaimer of implied warranties. The short answer is yes: All but one of the plaintiffs are bound by the TUA. And under Texas law, the TUA expressly disclaims "any warranty of merchantability and of fitness for a particular purpose." Dkt. No. 8 ¶ 8 (emphasis omitted).[5] Thus, the Court need not address whether Counts Two and Three state a claim on the merits.

**i. The plaintiffs, except for Kelley Foster, are bound by the TUA.**

Start with the TUA's plain text. The agreement "is entered into by [the] Grower and Corteva Agriscience to set forth the terms and conditions upon which [the] Grower shall use Seed containing Corteva Sourced Technology." *Id.* at 2. The TUA defines "Grower" as "all individuals and/or entities associated with the farming operation identified in the [TUA's] applicable Grower Information box." *Id.* ¶ 1. Here, the applicable Grower Information box identifies "Gary & Justin Foster Farms" as the "Business Entity Grower" that is party to the TUA. *Id.* at 2. Plaintiff Justin Foster signed the TUA as the authorized representative of Gary & Justin Foster Farms, which the Fosters concede is the same legal entity as the Gary & Justin Foster Partnership. *Id.*; *see* Dkt. No. 1 ¶ 1 ("Pursuant to the TUA between Corteva and one of the Plaintiffs, (Gary & Justin Foster Partnership) . . . .").

By signing the TUA, Justin Foster acknowledged that he is "fully authorized to legally bind and to enter into the Agreement on behalf of the Grower." Dkt. No. 8 at 2. He

[5] Corteva filed the TUA with their motion to dismiss. *See* Dkt. No. 8. Typically, courts are limited to the complaint when resolving a motion to dismiss under Rule 12(b)(6). But "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000) (alteration in original) (quotation omitted). The TUA is expressly referenced in the Fosters' complaint, Dkt. No. 1 ¶ 1, and it is central to most of their claims. So the Court considers the TUA without treating the motion as one for summary judgment.

also agreed that "the terms and conditions of the Agreement are legally binding on the Grower and all individuals and entities that will plant and grow crops from Seed on behalf of the undersigned and the Grower." *Id.* Altogether, the Gary & Justin Foster Partnership is bound by the TUA, as are all individuals and entities who (1) are "associated with [that] farming operation," and (2) who planted and grew crops from the seed purchased by Justin Foster on behalf of the Gary & Justin Foster Partnership. *See id.* at 2, ¶ 1.

By their own admission, plaintiffs Gary Foster, Jan Foster, Justin Foster, the Gary & Justin Foster Partnership, and Whitfield Acres Inc. operate as the "Foster family" farming operation. Dkt. No. 1 ¶ 11. The complaint states:

> In the spring of 2024, the Foster family, operating under three entities—Gary & Jan Foster as individuals, Gary & Justin Foster as a partnership, and Whitfield Acres Inc. (hereinafter referred to as "the Fosters")—used Corteva's Phytogen Cotton seed variety 350 to plant across 2,616 acres spread out among the Fosters['] different fields.

*Id.* According to the Fosters, some of these fields are contiguous, while others are spread out across multiple counties. *Id.* The Fosters do not indicate which entity is responsible for which fields; instead, their complaint conveys that their farming operation is "unified under the Foster family name." Dkt. No. 7 at 15; *id.* (noting that Justin Foster, besides operating the Gary & Justin Foster Partnership, is also the President of Whitfield Acres Inc.).

In sum, five of the six plaintiffs are bound by the TUA. Justin Foster and the Gary & Justin Foster Partnership are bound as signatories. Meanwhile, Gary Foster, Jan Foster, and Whitfield Acres Inc. are bound because they are "associated with" the Partnership's farming operation and are thus "Grower[s]" under the TUA's definition. Dkt. No. 1 ¶ 1.

The Fosters' counterarguments ignore the TUA's plain text. On one hand, they assert that "Corteva's family association argument ignores corporate separateness." Dkt.

No. 24 at 22. On the other hand, their own complaint concedes that "the Foster family" "operat[es] under three [plaintiff] entities." Dkt. No. 1 ¶ 11. Both cannot be true. In any event, the Fosters' case law does not support their assertion that the TUA cannot bind non-signatories absent privity or agreement. *See* Dkt. No. 24 at 22. At best, *Berge Helene Ltd. v. GE Oil & Gas, Inc.* recognizes that contractual privity is required for a warranty claim in a federal maritime action. 896 F. Supp. 2d 582, 601–03 (S.D. Tex. 2012). And *Amstadt* only contradicts the Fosters' argument: It highlights that DTPA liability is directed "against those with whom [the plaintiff] [has] engaged in a consumer transaction." 919 S.W.2d at 652. If the Fosters are right that most of the plaintiffs are not party to the TUA, then those plaintiffs have not transacted with Corteva and cannot bring a DTPA claim against the company.

So the point stands: Gary Foster, Jan Foster, Justin Foster, the Gary & Justin Foster Partnership, and Whitfield Acres Inc. are bound by the TUA and subject to its provisions.

**ii. Kelley Foster's claims are dismissed.**

That leaves one plaintiff: Kelley Foster. *See* Dkt. No. 1 ¶ 4. As Corteva points out, the complaint includes zero allegations that Kelley Foster purchased, planted, or had any ownership interest in the Phytogen cotton seed that the other Foster plaintiffs used in the spring of 2024. Dkt. No. 7 at 17. Nor are there any allegations indicating how Kelley Foster was harmed by Corteva's alleged failures. The complaint only indicates that Kelley Foster "lawfully reside[s] in the State of Texas"—nothing more. Dkt. No. 1 ¶ 4.

The Fosters' response undermines their theory of the case. They argue that Kelley Foster is a proper plaintiff because her "claims are intertwined with the others" given that she is "part of the family operation." Dkt. No. 24 at 23. But if that is true for Kelley Foster, then it is also true for the other plaintiffs. Their claims are no less intertwined with the

Foster "family operation," *id.*, making them subject to the TUA and its provisions. *See supra*, Analysis § 3.B.i. Accordingly, the Fosters have not plausibly alleged any claim on Kelley Foster's behalf, and the Court dismisses her claims from the lawsuit.

**iii. Texas law applies.**

Determining who is bound by the TUA says nothing about what substantive law applies. To determine the applicable substantive law, "[a] federal court sitting in diversity follows the choice of law rules of the state in which it sits." *Crawford Pro. Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 258 (5th Cir. 2014) (quotation omitted). In Texas, courts look to the Restatement (Second) of Conflict of Laws. *Sonat Expl. Co. v. Cudd Pressure Control, Inc.*, 271 S.W.3d 228, 231 (Tex. 2008). Applying that understanding, the Supreme Court of Texas recognizes that courts should usually enforce contract provisions that choose the law of a particular jurisdiction. *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677 (Tex. 1990); *see Cardoni v. Prosperity Bank*, 805 F.3d 573, 581 (5th Cir. 2015) (noting the "default position" under Texas law that choice-of-law provisions are enforceable). That said, the freedom to choose what law will apply "cannot be unlimited." *DeSantis*, 793 S.W.2d at 677. That freedom is limited by Section 187 of the Restatement, which limits the enforceability of a choice-of law clause when (among other things) the chosen state does not have a reasonable relationship with the parties. *Caton v. Leach Corp.*, 896 F.2d 939, 942 (5th Cir. 1990).

Before conducting a choice-of-law analysis under the Restatement, however, a Texas court must first determine whether Texas law conflicts with other potentially applicable law. *See Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 419 (Tex. 1984), *superseded by* Tex. Civ. Prac. & Rem. Code §§ 33.001–.004. If the laws are consistent, there is no need for a choice-of-law analysis, and Texas law will apply. *Sonat Expl.*, 271 S.W.3d at 231; *Fraud-Tech, Inc. v.*

*Choicepoint, Inc.*, 102 S.W.3d 366, 377–78 (Tex. App.—Fort Worth 2003, pet. denied). In other words, "[i]f the result would be the same under the laws of either jurisdiction," a court "should" bypass the choice-of-law question. *Playboy Enters., Inc. v. Sanchez-Campuzano*, 519 F. App'x 219, 225 (5th Cir. 2013).

Here, the TUA contains an Iowa choice-of-law provision. Dkt. No. 8 ¶ 11. But the parties do not make much of the provision, arguing that they win under Texas or Iowa law. Dkt. Nos. 7 at 19; 24 at 18–21. Because neither party demonstrates a material inconsistency between Texas and Iowa law, the Court need not undertake the choice-of-law analysis here. *See Pickle v. Universal Cable Holdings*, 534 F. Supp. 3d 663, 671 (N.D. Tex. 2021) (Hendrix, J.) (declining to consider choice-of-law when the parties agreed that the outcome was the same under Texas law or the chosen law of Missouri). Thus, the Court will apply Texas law.

**iv. The TUA's conspicuous disclaimer is enforceable under Texas law.**

The Texas Uniform Commercial Code allows sellers to disclaim both the implied warranty of merchantability and the implied warranty of fitness for a particular purpose. Tex. Bus. & Com. Code § 2.316(b); *see Sw. Bell Tel. Co. v. FDP Corp.*, 811 S.W.2d 572, 577 (Tex. 1991). To disclaim the implied warranty of merchantability, a written disclaimer "must mention the word 'merchantability'" and be "conspicuous." *Womco, Inc. v. Navistar Int'l Corp.*, 84 S.W.3d 272, 279 (Tex. App.—Tyler 2002, no pet.) (citing Tex. Bus. & Com. Code § 2.316(b)). To disclaim the implied warranty of fitness for a particular purpose, the "disclaimer must be in writing and must be conspicuous." *Id.*

Whether a disclaimer is conspicuous is a question of law for the Court. Tex. Bus. & Com. Code § 1.201(b)(10). A disclaimer is conspicuous if "a reasonable person . . . ought to have noticed it." *Womco*, 84 S.W.3d at 279. "[C]ourts have found that disclaimers in bold

or capital letters, setting such disclaimer apart from the surrounding text, were sufficiently conspicuous to make the disclaimer valid." *Mark on 287 Owner, LLC v. Croft, LLC*, 746 F. Supp. 3d 390, 399 (N.D. Tex. 2024) (alteration in original) (quoting *Adams v. Nissan N. Am., Inc.*, 395 F. Supp. 3d 838, 853 (S.D. Tex. 2018)); Tex. Bus. & Com. Code § 1.201(b)(10).

The TUA's disclaimer is set forth in writing in a stand-alone paragraph titled "**DISCLAIMER OF WARRANTY**." Dkt. No. 8 ¶ 8 (emphasis in original); *see also Materials Mktg. Corp. v. Spencer*, 40 S.W.3d 172, 175 (Tex. App.—Texarkana 2001, no pet.) ("A printed heading in capitals is conspicuous."). The disclaimer—also depicted in bold and in capitals—reads:

> TO THE EXTENT ALLOWABLE BY LAW, THE EXPRESS WARRANTY ABOVE EXCLUDES, AND IS IN LIEU OF, ALL OTHER WARRANTIES, EXPRESS, IMPLIED, STATUTORY OR OTHERWISE, **INCLUDING ANY WARRANTY OF MERCHANTABILITY AND OF FITNESS FOR A PARTICULAR PURPOSE, WHICH ARE HEREBY EXPRESSLY DISCLAIMED**.

Dkt. No. 8 ¶ 8 (emphasis in original). As required, the disclaimer says "merchantability." And the relevant language is conspicuous because it "is in capital letters equal in size to the surrounding text[] and is in contrasting bold type." *Dewayne Rogers Logging, Inc. v. Propac Indus., Ltd.*, 299 S.W.3d 374, 390 (Tex. App.—Tyler 2009, pet. denied). Thus, the Court concludes that a reasonable person ought to have noticed the TUA's disclaimer.

In response, the Fosters assert that the disclaimer is also subject to the DTPA's more rigorous conspicuousness requirements, which it fails to satisfy. Dkt. No. 24 at 19–20. True enough, for claims alleging deceptive practices under the DTPA, the statute states that a waiver is "void" unless it is "conspicuous and in bold-face type of at least 10 points in size,"

among other requirements. Tex. Bus. & Com. Code § 17.42(a), (c)(1). And the font in the TUA's disclaimer does seem to be closer to 8 or 9 points than 10. *See* Dkt. No. 24 at 21.

Even so, the Fosters find no harbor in the DTPA. The Supreme Court of Texas has held that the DTPA's "no waiver" and font provisions apply only to disclaimers of acts that the DTPA defines as deceptive under Section 17.46(b), not to breach-of-warranty claims. *Sw. Bell Tel. Co.*, 811 S.W.2d at 576–77. "Because claims for breach of warranty derive from common-law principles or other statutory provisions, [courts] must consult these sources in determining the nature and extent of warranties." *Id.* Relevant here, the Texas UCC allows implied warranties and permits sellers to disclaim them so long as certain requirements are met. Tex. Bus. & Com. Code §§ 2.314, 2.315, 2.316(b). Because the TUA's disclaimer satisfies those requirements, it is valid and enforceable notwithstanding the DTPA. *Arthur's Garage, Inc. v. Racal-Chubb Sec. Sys., Inc.*, 997 S.W.2d 803, 812 (Tex. App.—Dallas 1999, no pet.) ("If the warranty is one that can be disclaimed under the law creating it, a limitation of liability clause does not offend the DTPA 'no waiver' provision.").

Next, the Fosters appeal to the "circumstances under which Justin Foster signed the [TUA]," explaining that he "docusigned the TUA using his finger on his cell phone" and that the TUA was "even less legible in this format." Dkt. No. 24 at 20. These allegations were not pled in the complaint, and they cannot be squared with Justin Foster's signature certifying that he "read and underst[ood] the terms and conditions" of the TUA. Dkt. No. 8 at 2. More to the point, "the circumstances surrounding the transaction are not relevant to the issue of conspicuousness." *Am. Eagle Ins. Co. v. United Techs. Corp.*, 48 F.3d 142, 146 (5th Cir. 1995) (citing *Cate v. Dover Corp.*, 790 S.W.2d 559, 561 (Tex. 1990)). Texas applies an objective standard of conspicuousness, not a subjective one. *Id.* Thus, the Fosters' new

allegations about Justin Foster's actions in signing the TUA do not change the bottom line: The TUA's disclaimer is enforceable, and Counts Two and Three are accordingly barred.

**C. Without viable claims for breach of an implied warranty, Count Four fails.**

In Count Four, the Fosters raise another DTPA claim premised on breaches of the implied warranties of merchantability and fitness for a particular purpose—as alleged in Counts Two and Three.[6] Dkt. No. 1 ¶¶ 23–25; *see Parkway Co. v. Woodruff*, 901 S.W.2d 434, 438 (Tex. 1995) ("The DTPA prohibits the breach of an express or implied warranty . . . ." (citing Tex. Bus. & Com. Code § 17.50(a)(2))). "To recover under the DTPA on a breach of warranty, a plaintiff must show (1) consumer status, (2) existence of the warranty, (3) breach of the warranty, and (4) the breach was a producing cause of damages." *Elliott v. Kraft Foods N. Am., Inc.*, 118 S.W.3d 50, 56 (Tex. App.—Houston [14th Dist.] 2003, no pet.).

As explained, the TUA expressly disclaims the implied warranties of merchantability and fitness for a particular purpose. *See supra*, Analysis § 3.B.iv. So the Fosters cannot rely on those implied warranties—as they do in their complaint—to sustain their second DTPA claim. Dkt. No. 1 ¶ 23 ("Plaintiffs allege that Corteva has breached the implied warranties as alleged in Counts [Two] and [Three]."). As a result, Count Four is dismissed.

**D. The Court grants leave to amend Count One only.**

Lastly, the Court must decide whether to permit amendment on any or all counts. Under Federal Rule of Civil Procedure 15, the Court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Rule 15 favors granting leave to amend, and a district court must have a "substantial reason" for denying leave. *Marucci Sports, LLC*

---

[6] The heading for Count Four states, "DTPA Breach of Express or Implied Warranty." Dkt. No. 1 at 10. But the Fosters do not mention an express warranty in their complaint.

*v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (quoting *Jones v. Robinson Prop. Grp., LP*, 427 F.3d 987, 994 (5th Cir. 2005)). In deciding whether to grant leave to amend, a district court may consider factors like "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , and futility of the amendment." *Id.* (quoting *Jones*, 427 F.3d at 994) (omission in original). It is futile to grant leave to amend if "the amended complaint would fail to state a claim upon which relief could be granted." *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000).

For Counts Two, Three, and Four, it would be futile to grant leave to amend given the TUA's express disclaimer of the implied warranties of merchantability and fitness for a particular purpose. Because Corteva disclaimed these warranties, "no set of facts could support" the Fosters' claims premised on alleged breaches of those same warranties. *Mark on 287 Owner, LLC*, 746 F. Supp. 3d at 401 (concluding that it would be futile to grant leave to amend where claims for breach of the implied warranties were effectively disclaimed).

But leave to amend is granted on Count One, since it is unclear whether the Fosters have already pled their "best case" on that count. *Wiggins v. La. State Univ.—Health Care Servs. Div.*, 710 F. App'x 625, 627 (5th Cir. 2017). "A plaintiff has pleaded her best case after she is 'apprised of the insufficiency' of her complaint." *Id.* (quoting *Dark v. Potter*, 293 F. App'x 254, 257 (5th Cir. 2008)). Given Rule 15's strong preference for granting leave to amend, the Court will allow the Fosters an opportunity to replead their first DTPA claim in light of the Court's order. Thus, Count One—and Count One only—is dismissed without prejudice. For the same reasons, the Fosters are granted leave to add allegations about Kelley Foster.

**4. Conclusion**

The Fosters have not plausibly alleged claims under the DTPA or for breaches of the implied warranties of merchantability or fitness for a particular purpose. And there are not enough allegations at this stage to keep Kelley Foster in the case. Therefore, for the reasons above, the Court grants Corteva's motion (Dkt. No. 6) in full, dismisses Counts Two, Three, and Four with prejudice, and dismisses Kelley Foster as a plaintiff. But because there is no clear evidence of futility, Count One is dismissed without prejudice, and the Fosters are granted leave to add allegations that would permit Kelley Foster to remain as a plaintiff.

Any amended complaint shall be filed within 21 days of this Order.

So ordered on August 27, 2026.

JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE